United States District Court
Southern District of Texas

**ENTERED**

April 17, 2024

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| JAY RICHARDSON, *individually and for others similarly situated*, | § § § § | |
| Plaintiff, | § | CIVIL ACTION NO. H-20-223 |
| v. | § § | |
| NES GLOBAL, LLC, | § § | |
| Defendant. | § § § | |

**MEMORANDUM AND ORDER**

This is one of many lawsuits seeking unpaid overtime compensation for individuals working in the oil and gas industry.  Jay Richardson sued his employer, NES Global, LLC, alleging that NES had failed to pay Richardson and other workers like him the overtime rates required by the Fair Labor Standards Act (FLSA) when they worked over 40 hours in a workweek. (Docket Entry No. 41).  Richardson sued on behalf of other, similarly suited workers, seeking to certify a collective action to represent such employees. The court conditionally certified two classes of NES employees: those classified as exempt from the FLSA requirements, and those classified as nonexempt. (Docket Entry No. 39).  The parties resolved the claims of the nonexempt class members. (Docket Entry No. 99 at 9 n.2).  The case was stayed pending the decisions in *Hewitt v. Helix Energy Sols. Grp., Inc.*, first before the Fifth Circuit en banc, and then before the Supreme Court.  In *Hewitt*, the Court ruled that the salary-basis test was not met when an employer paid by the day.  The stay in this case has been lifted.

The plaintiffs have moved for partial summary judgment that NES cannot claim an exemption or good-faith affirmative defense, and NES has moved for summary judgment on all of

the plaintiffs' claims. (Docket Entry Nos. 99, 100).  NES has also moved to strike certain exhibits to the plaintiffs' motion for summary judgment. (Docket Entry No. 108).   The court heard arguments on the motions. (Docket Entry No. 143).  Having reviewed the motions, briefs, the arguments of counsel, the record, and the applicable law, the court denies the motion to strike.  The court grants in part and denies in part Richardson's motion for partial summary judgment, and grants in part and denies in part NES's motion for summary judgment. The reasons for these rulings are set out below.

I.      **Background**

In January 2020, Jay Richardson, individually and behalf on all others similarly situated (collectively "the plaintiffs"), sued NES Global, LLC, seeking unpaid overtime compensation and damages under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 (the "FLSA").

NES has two categories of employees: "(1) internal employees who oversee NES's recruitment services and operations and (2) contract employees who are assigned to provide services to NES's clients on a temporary or project basis, typically referred to as 'Candidates.'" (Docket Entry No. 99 at 11).  Richardson and the other collective action members worked for NES as contractors, or "Candidates."  Until December 2016, NES paid its Candidates "a straight hourly or day rate for all hours worked each workweek." (*Id.* at 12). In 2016, the DOL audited NES's hourly rate pay structure and pay practices and determined that NES "misclassified hourly non-exempt employees as exempt employees" and therefore owed 205 employees over $2 million in overtime compensation. (Docket Entry No. 100 at 21).

Following the audit, NES created an FLSA Questionnaire to determine if each Candidate's position "satisfies at least one of the FLSA duties tests[,]" and implemented a new compensation structure intended to comply with the FLSA. (Docket Entry No. 99 at 12).  According to NES,

"[u]pon approval [of the determination that a Candidate satisfied the duties exemption test] by NES's in-house legal department, NES will classify that Candidate as 'exempt' and pay that Candidate a guaranteed weekly Retainer that exceeds $684.00 per week and is based upon the Candidates' hourly rate for a set number of hours." (*Id.* at 13). NES guaranteed Candidates the Retainer for any workweek in which they performed any work.  NES paid additional compensation "for all hours worked in excess of those that made up the Retainer." (*Id.*). The plaintiffs' Retainer hours ranged from 4 to 14 hours. (Docket Entry No. 100 at 18).

Richardson was classified as exempt from the FLSA overtime requirements.  He was paid an hourly rate of $105 per hour with a Retainer period of 10 hours, or $1,050 a week. (Docket Entry No. 100 at 19–20). For any week in which Richardson performed any work—even an hour— he was guaranteed $1,050. He would not receive overtime pay, but he was entitled to an additional $105 per hour for every hour worked over 10 hours. (*Id.*).  If he worked 50 hours, for example, he would receive $5,250. The plaintiffs contend that the Retainer was illusory because it was not actually "guaranteed," alleging that the "Plaintiffs were paid less than their alleged retained [sic] in 144 or 167 weeks in which they worked fewer than their [R]etainer hour [sic]." (*Id.* at 13). The plaintiffs allege that under the "salary-basis test," they should be treated as nonexempt employees entitled to overtime compensation that they were not paid.

The parties agreed to conditionally certify two classes of NES workers:

1. "all NES employees categorized as exempt from the Fair Labor Standards Act's overtime pay requirements and not paid overtime for all hours worked over forty in any given workweek in the past 3 years" and

2. "all NES employees categorized as not exempt from the Fair Labor Standards Act's overtime pay requirements and not paid overtime for all hours worked over forty in any given workweek in the past 3 years."

(Docket Entry No. 40).   After certification, 161 individuals filed Notices of Consent to Opt-In.
(Docket Entry No. 99 at 9).

NES has moved for summary judgment, arguing that it properly classified the plaintiffs as
exempt from overtime requirements, that it acted in good faith, and that it did not act willfully if it
did mis-classify the plaintiffs. (Docket Entry No. 99). The plaintiffs have moved for partial
summary judgment as to the defendant's exemption and good-faith defenses. (Docket Entry No.
100).

## II.      The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"
*Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th
Cir. 2022) (quoting Fed. R. Civ. P. 56(a)).  "A fact is material if it might affect the outcome of the
suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021)
(quoting reference omitted).   The moving party "always bears the initial responsibility of
informing the district court of the basis for its motion[] and identifying" the record evidence
"which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp.
v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary
judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the
burden of demonstrating by competent summary judgment proof that there is [a dispute] of
material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022)
(alteration in original) (quoting reference omitted).  "However[,] the movant 'need not negate the

elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). All reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

## III.   Analysis

### A.  The Motion to Strike

NES moves to strike the declaration of Omid Afhami, alleging that "it is riddled with inaccuracies, misrepresentations, and outright false statements." (Docket Entry No. 108 at 1). NES identifies 46 discrepancies in the data Afhami compiled and described in his declaration. (Docket Entry Nos. 108 at 3; 108-1).

Afhami is a Data Specialist at the plaintiffs' counsel's law firm. He prepared a Deductions Summary and a Reasonable Relationship Summary that the plaintiffs submit under Federal Rules of Evidence 1006 in support of their motion for partial summary judgment. He also submitted a

declaration describing the calculations made and the underlying documents used in preparing the summaries. (Docket Entry No. 101). The plaintiffs argue that NES's "discrepancies" are simply "workweeks it believes Afhami should not have included in his analysis and instances in which the [R]etainer amount contained in his summaries was incorrect (even if the 'error' doesn't change the fact NES still fails the 'salary basis' test)." (Docket Entry No. 112 at 1).

The court has reviewed the alleged discrepancies, which fall into three categories. First are the weeks that were a plaintiff's first or last week of work with NES, which NES claims should not have been included. (*See, e.g.*, Docket Entry No. 108-1 at ¶¶ 7–9). Second are the weeks in which Afhami included an incorrect Retainer amount or an incorrect pay amount for the week. In general, when this error occurred, it appears as though Afhami used a higher amount. (*See, e.g.*, *id.* at ¶¶ 17–19). Third, NES alleges that for certain weeks, specific plaintiffs were shown as paid on a day-rate basis or a nonexempt basis. (*See, e.g.*, *id.* at ¶¶ 4, 6, 13).

Federal Rule of Evidence 1006 provides that a litigant "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. Such summaries are admissible if the underlying documentation is admissible and available to the opposing party. In general, "[w]hether [a party] made mistakes in creating her summaries is more properly the subject of cross-examination." *Right of Way Maintenance Co. v. Gyro-Trac, Inc.*, No. 05-CV-4081, 2007 WL 1428634, at *3 (S.D. Tex. May 11, 2007).

The discrepancies that NES identifies are not so many or so gross as to make the analysis inadmissible. The first category appears to arise from the parties' dispute over whether a plaintiff's first and last certain weeks working at NES should be included. The second category arises from NES's assertion that certain numbers were incorrectly included, acknowledging that the identified

discrepancies often worked in NES's favor, because using a lower Retainer amount increases the ratio of guaranteed compensation to actual compensation.

The summary evidence is supported by thousands of data points, and the fewer than fifty "errors" do not make it admissible. The court's analysis of the summaries focuses on whether the identified discrepancies reduce the weight the summaries should receive.

Finally, NES argues that the plaintiffs' Exhibit 21, a DOL opinion letter, is unauthenticated and therefore inadmissible. (Docket Entry No. 108 at 7). The plaintiffs respond that the letter is available on Westlaw as DOL Opinion Letter, 1996 WL 1031793 (July 26, 1996), and is self-authenticating as an official publication. Fed. R. Evid. 902(5); (Docket Entry No. 112).  The court agrees that the letter is self-authenticating, but in the interest of caution has used the Westlaw version of the letter.

### B.  Exempt Employees under the FLSA

Employees covered by the FLSA receive time-and-a-half pay for all hours worked in excess of 40 hours per week. *See* 29 U.S.C. § 207(a). However, certain categories of workers are exempted from the FLSA's protections, including the overtime pay requirements. "Exemptions under the FLSA are construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption." *Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 689 (S.D. Tex. 2012), *aff'd*, 755 F.3d 279 (5th Cir. 2014). "The employer must prove facts by a preponderance of the evidence that show the exemption is 'plainly and unmistakably' applicable." *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

The FLSA exempts "highly compensated employees." 29 C.F.R. § 541.601.  The relevant regulations provide:

**(a) (1)** Beginning on January 1, 2020, an employee with total annual compensation of at least $107,432 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee as identified in subparts B, C or D of this part. . . .

**(b)(1)** "Total annual compensation" must include at least $684 per week paid on a salary or fee basis as set forth in §§ 541.602 and 541.605, except that § 541.602(a)(3) shall not apply to highly compensated employees. . . .

**(3)** An employee who does not work a full year for the employer, either because the employee is newly hired after the beginning of the year or ends the employment before the end of the year, may qualify for exemption under this section if the employee receives a ***pro rata*** portion of the minimum amount established in paragraph (a) of this section, based upon the number of weeks that the employee will be or has been employed. . . .

**(c)** A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties. Thus, a highly compensated employee will qualify for exemption if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee . . .

**(d)** This section applies only to employees whose primary duty includes performing office or non-manual work. Thus, for example, non-management production-line workers and non-management employees in maintenance, construction and similar occupations . . . involving repetitive operations with their hands, physical skill and energy are not exempt under this section no matter how highly paid they might be.

*Id.*

This case turns on whether NES's pay policy passes the salary-basis test required for an employee to be exempt under 29 C.F.R. § 541.601. This case was stayed pending the Supreme Court's resolution of *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39 (2023), which examined "whether a high-earning employee is compensated on a 'salary basis[.]'" Although the employer in *Hewitt* was claiming the bona-fide executive exemption, this exemption is closely related to the highly compensated employee exemption and uses the same salary-basis test. The Department of Labor's regulations provide two "non-overlapping paths to satisfy the salary-basis requirement"— 29 C.F.R. § 541.602(a) ("§ 602(a)") and § 541.604(b) ("§ 604(b)"). *Hewitt*, 598 U.S. at 56.

Section 602(a), which sets forth the "main salary-basis provision," *id.* at 46, states:

> An employee will be considered to be paid on a "salary basis" . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to [certain exceptions], an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work.

29 C.F.R. § 541.602(a).

This provision "ensures that the employee will get at least part of his compensation through a preset weekly (or less frequent) salary, not subject to reduction because of exactly how many days he worked." *Hewitt*, 598 U.S. at 46.  An employer does not lose the exemption or violate the salary basis requirement "if an exempt employee who is guaranteed at least $684 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek." 29 C.F.R. § 541.604(a) ("§ 604(a)"). "Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis)." *Id.*

While § 602(a) addresses payments made on a weekly or less frequent basis, § 604(b) "focuses on workers whose compensation is 'computed on an hourly, a daily or a shift basis.'" *Hewitt*, 598 U.S. at 39 (quoting § 604(b)).  Section 604(b) provides that an employee whose pay is based on an hourly, daily, or shift rate may still qualify as a bona-fide executive as long as two conditions are met. First, the employer must "also" guarantee the employee at least [$684] each week (the minimum salary level) "regardless of the number of hours, days or shifts worked." § 604(b).  And second, that guaranteed amount must bear a "reasonable relationship" to the "amount actually earned" in a typical week.  *Id.* The guaranteed amount must be "roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." *Hewitt*, 598 U.S. at 47 (quoting 29 C.F.R. § 541.601(b)(1)) (internal

9

citations omitted). Section 604(b) reinforces the exclusion of daily, hourly, and shift rates from §
602(a) and makes clear that compensation based on shorter time frames than weekly—for
example, daily or hourly—may still be considered a "salary" when at least $684 per week is
guaranteed for any week worked.

### C. Whether NES's Compensation Passes the Salary-Basis Test

The parties appear to agree that the only factor relevant to determining whether NES may
claim the highly compensated employee exemption is whether the plaintiffs were paid on a salary
basis. NES argues that its Retainer meets the salary-basis test under § 602(a) because it is a
guaranteed weekly base salary, paid without regard to the number of hours or days worked.
(Docket Entry No. 104 at 11–12). The plaintiffs reject this, arguing that "when they worked less
[than the standard number of hours and days], NES overwhelmingly failed to comply with even
that minimal retainer. In more than 80% of the workweeks in which Plaintiffs worked fewer than
their supposed 'retainer' hours, NES paid them only for the hours they worked (and not the larger,
'retainer' amount)." (Docket Entry No. 100 at 7).

The plaintiffs contend that the Retainer was not a true retainer because it was not actually
"guaranteed." They allege that "NES's payroll records and timesheets produced in this matter
show Plaintiffs were paid less than their alleged retained [sic] in 144 or 167 weeks in which they
worked fewer than their [R]etainer hour [sic]." (Docket Entry Nos. 100 at 13; 101). Although NES
contests whether the Afhami declaration is admissible, NES acknowledges that there were several
instances in which it failed to pay the plaintiffs their full Retainer when they worked less than the
part of the week covered by their Retainer Period. The plaintiffs allege that "[e]ven accepting all
NES's complaints as true, NES's records demonstrate NES paid Plaintiffs less than their alleged
salaries in at least 80% of the workweeks in which Plaintiffs worked fewer than their 'retainer'

hours." (Docket Entry No. 112 at 6). Instead, NES argues that "[t]he limited instances where some

of the Plaintiffs did not receive their guaranteed retainers do not establish that NES had an actual

practice of improper deductions." (Docket Entry No. 104 at 17–18).

NES's compensation structure does not consist only of a Retainer. The plaintiffs received

additional compensation for days or hours worked beyond their Retainer amount. NES argues that

"[t]he FLSA regulations unambiguously allow for an employee's weekly guarantee to constitute

only 'part of' the employee's weekly compensation." (Docket Entry No. 99 at 24–25) (quoting §

602(a)). NES filed a notice of supplemental authority, (Docket Entry No. 138), to alert the court

to *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023), which held that the phrase

"beyond the normal workweek" in § 604(b) was used as an "example[] of when additional

compensation may be paid without an employee losing the overtime exemption"—the court found

that it "does not, by its plain language, exclude other compensation schemes where additional

compensation is calculated hourly but not beyond the 40-hour workweek." *Id.* at 1179 n.4. The

Tenth Circuit held that "§ 541.604(a) expressly allows for additional compensation to be paid on

any basis," including "an hourly rate basis." *Id.* 1177.

The plaintiffs filed a notice of supplemental authority, (Docket Entry No. 119), to argue

that a case from this district, *Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 3:19-CV-00320, 2022

WL 658768 (S.D. Tex. Mar. 4, 2022), *report and recommendation adopted*, 2022 WL 889276

(S.D. Tex. Mar. 25, 2022), holds the opposite. In *Gentry*, the plaintiffs were paid a "guaranteed

weekly salary equal to 8 hours of pay" for any week that they performed any work, plus their

hourly rate "for all hours worked in excess of 8 hours in a work week, including those hours

worked over 40 in a particular week." *Id.* at *2. The court found that, to determine whether the

plaintiffs were exempt from the FLSA overtime requirements, this compensation structure had to

11

be analyzed under § 604(b), not § 604(a): if "the guaranteed salary amount was for a normal workweek (i.e., 40 hours)," § 541.604(a) applies, but if "the guaranteed amount was in fact for fewer hours than a normal workweek of forty (40) hours," § 541.604(b) applies. *Id.*

A recent case deciding the issues in the context of a very similar NES compensation plan is very helpful.  In *Alvarez v. NES Glob. LLC*, --- F. Supp. 3d. ---, 2023 WL 9111908 (S.D. Tex. Dec. 29, 2023), Judge Ellison explained that "[w]hereas *Gentry* concerned a scheme where the guaranteed weekly salary was equal to eight hours of pay and therefore was computed on an hourly basis, *Wilson* involved a fixed bi-weekly base salary above the FLSA minimum plus additional compensation, some of which was paid on an hourly basis."  *Id.* at *5. Here, the plaintiffs were not paid in the same way as the *Wilson* employees.  Instead, the Retainer "guaranteed" a worker a certain number of hours in a work week, typically around 11, and additional compensation for hours worked above that number. (Docket Entry No. 99 at 6). Just as in *Alvarez*, the plaintiffs' weekly guaranteed compensation was computed on an hourly basis and additional compensation was paid for time worked *in excess of* the period that made up the Retainer.  The NES compensation scheme at issue here is closer to the compensation scheme used in *Gentry* than the scheme used in *Wilson*.

The Supreme Court's decision in *Hewitt* lends further support to the conclusion that § 604(b)—not § 602(a)—applies. In *Hewitt*, the respondent was paid on a daily-rate basis, with no overtime compensation. The Court held that a high-earning employee, like Hewitt, is not compensated on a "salary basis" under § 602(a) when his paycheck is based solely on a daily rate. *Hewitt*, 598 U.S. at 43-44.  Of particular importance, the Court held that the term "basis" in § 602(a) signals "the unit or method for calculating pay, not the frequency of its distribution." *Id.* at 53. "[T]hat unit must be a week or less frequent measure; it cannot be a day, or other more frequent

measure, as it was for Hewitt." *Id.* at 52. As noted, the "unit of time" that Helix, the defendant in

*Hewitt*, used to calculate its Retainer and additional compensation was the "hourly rate for a set

number of hours." (Docket Entry No. 99 at 13; Docket Entry No. 99-46 at 82:8-16).

The *Hewitt* Court stated that Helix could comply with the FLSA by "add[ing] to Hewitt's

per-day rate a weekly guarantee that satisfies § 604(b)'s conditions . . . [o]r . . . convert[ing]

Hewitt's compensation to a straight weekly salary for time he spends on the rig." *Hewitt*, 598 U.S.

at 60. As Judge Ellison observed in *Alvarez*, the *Hewitt* "Court did *not* say that adding a weekly

guarantee to Hewitt's per-day rate would satisfy the conditions of § 602(a) or § 604(a)—which is

essentially the position Defendant urges this Court to adopt." *Alvarez*, 2023 WL 9111908, at *6.

Justice Kavanaugh, in his dissenting opinion in *Hewitt*, reasoned that, because Hewitt was

guaranteed $963 for any day he worked, by definition, he was guaranteed $963 for any week in

which he worked.  This argument is similar to NES's emphasis that its workers were guaranteed a

minimum salary. *Hewitt*, 598 U.S. at 65, 143 S.Ct. 677 (Kavanaugh, J., dissenting).  *Id.* The

majority, however, disagreed:

> The dissent reasons that because Hewitt received more than $455 for a day's work, he must
> have been paid on a salary basis. That is a non-sequitur to end all non-sequiturs. Hewitt's
> high daily pay ensured that the HCE rule's salary-*level* requirement would not have
> prevented his exemption: $963 (per day) is indeed more than $455 (per week). But before
> any discussion of salary level comes in, an employer must pay an employee on a salary
> *basis*. . . . Or, one might say that an employee is paid on "a salary basis," within the
> regulation's meaning, when he gets what ordinary people think of as a salary. And contra
> the dissent, the regulation's "all or part" reference says nothing different. That term makes
> clear that a worker can be paid on a salary basis even if he additionally gets non-salary
> compensation, like a bonus. But the employee still must be paid a salary. And Hewitt was
> not. He received a high day rate (higher than lots of salaries); but he did not get a salary (of
> $963 or any other amount) because his weekly take-home pay could be as little as $963 or
> as much as $13,482, depending on how many days he worked.

*Id.* at 54 n.5 (internal citations omitted).

While NES's Retainer policy might satisfy the salary-*level* requirement, that does not mean it satisfies the salary-*basis* test. As in *Hewitt*, the plaintiffs' weekly pay could be as little as their weekly guarantee or several times greater, depending on how much time they worked above the number of hours their Retainer was based on. Because of this, § 604(b) applies to the NES's pay structure for the plaintiffs, which was a weekly guarantee based on an hourly rate and substantially less than what would have been paid for a 40-hour workweek.

Under § 604(b), the guaranteed salary must bear a "reasonable relationship" to the "amount actually earned" in a typical week.  That is, the guaranteed salary must be "roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." 29 C.F.R. § 541.601(b)(1).  The reasonable relationship test "ensures that the weekly guarantee is close to what an employee would make based on a daily rate if the employee worked a normal amount of time during the week. What matters is whether the guaranteed weekly minimum accurately reflects the individual's 'salary.'" *Alvarez*, 2023 WL 9111908, at *7 (citing *Hewitt*, 598 U.S. at 47 ("Those conditions create a compensation system functioning much like a true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week.")).  "In applying [the reasonable relationship] test, the Department of Labor 'compares the exempt employee's actual earnings to his/her guaranteed weekly salary.' A ratio at or near 1.5-to-1 of actual earnings to guaranteed weekly salary is generally required to satisfy the reasonable-relationship test." *Gentry*, 2022 WL 658768, at *6 (quoting *Sonnier v. Recon Mgmt. Servs. Inc.*, No. 2:20-CV-00002, 2022 WL 141779, at *6 (W.D. La. Jan. 14, 2022)); DOL Opinion Letter, 2018 WL 5921453 (Nov. 8, 2018).

NES argues that "if the Court determines that the RRT applies to Plaintiffs, it must decertify the current putative collective class before it makes a ruling on the merits of whether or not NES

satisfied the RRT with respect to any of the Plaintiffs." (Docket Entry No. 99 at 28). NES argues

that "in order to determine if each class member's Retainer met the RRT, the Court will have to

conduct an individualized analysis into each Plaintiff's Retainer compared with the amounts each

Plaintiff actually earned each workweek. This analysis will require a highly individualized inquiry

into each Plaintiff's circumstances and will not be able to be made on a collective basis for all

Plaintiffs." (*Id.*). NES argues that *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir.

2021) requires decertification if the court must perform "a highly individualized inquiry into each

potential opt-in's circumstances[.]" *Id.* at 442.

NES is right to require the court to examine whether individualized inquiries into each

plaintiff's circumstances are needed, precluding collective resolution.   But the court finds

unpersuasive the argument that individualized circumstances and inquiries are present here as to

require decertification.[1] The court does not need to examine whether every opt-in plaintiff satisfies

the reasonable relationship test because the NES "does not even attempt to satisfy the reasonable-

relationship test, which alone is fatal to its claimed exemptions." *Alvarez*, 2023 WL 9111908, at

*8 (quoting *Gentry*, 2022 WL 658768, at *6); *see also Tyler v. Union Oil Co. of California*, 304

F.3d 379, 402 (5th Cir. 2002) ("[FLSA] exemptions are construed narrowly against the employer

and the employer has the burden of proving that an employee is exempt."). All members of the

opt-in class are highly compensated employees paid on NES's Retainer plan based on an hourly

calculation; NES does not contest that the plaintiffs were all compensated under the same pay plan

in the same manner. The court has sufficient legal and factual basis to determine whether the

exemption applies to the class without conducting an individualized inquiry.

---

[1] The court also notes that the motion for decertification is untimely, as it was due on August 11, 2021. (Docket Entry No. 89).  Even given the stay entered on August 5, 2021, NES did not move to decertify after the stay was lifted in December 2021.

Beyond NES's failure to satisfy the reasonable relationship test, the plaintiffs have shown that Richardson, the lead plaintiff, had an average earning ratio of 5.24-to-1, far beyond the 1.5-to-1 ratio required. (Docket Entry No. 100 at 19–20). The plaintiffs have submitted a Reasonable Relationship Summary "identifying the ratio between the opt-in Plaintiffs' total weekly compensation and the opt-in Plaintiff's Retainer. The purpose of this exercise was to determine the percentage of the total compensation received each week compared to the amount of each Opt-in Plaintiff's Retainer." (Docket Entry No. 101); Fed. R. Evid. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."). Although NES has raised potential inaccuracies in the numbers used to prepare the summary, as discussed above, this does not make the evidence inadmissible. In fact, a number of the errors NES identifies are the use of a higher Retainer than was actually paid, (Docket Entry No. 108), making the ratio calculation more favorable to NES. The plaintiffs' Reasonable Relationship Summary shows, that "out of the 6,376 workweeks within the three-year statute of limitations, the average ratio of the opt-in Plaintiffs' compensation to their respective Retainers was 3.55." (Docket Entry No. 101 at 4).

NES has failed to show that the plaintiffs were exempt employees. Because it is undisputed that the plaintiffs were not paid overtime for time worked beyond 40 hours, NES is liable for unpaid overtime compensation.

### D.  Willfulness

A two-year statute of limitations applies to FLSA misclassification and unpaid overtime compensation claims, but if an employer's statutory violation was willful, a three-year statute of limitations applies. 29 U.S.C. § 255(a); *Singer v. City of Waco*, 324 F.3d 813, 821 (5th Cir. 2003).

16

An FLSA violation is willful if the employer "knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). An employer's unreasonableness or even negligence is not enough to show reckless disregard. *Id.* at 134–35 & n.13. The plaintiff bears the burden of showing willfulness. *Karr v. City of Beaumont*, 950 F. Supp. 1317, 1325 (E.D. Tex. 1997). Complaints by employees can, in certain circumstances, show that a company knew or recklessly disregarded its obligations under the FLSA. But the mere fact that an employee stated an opinion that he or she was entitled to more pay, without more, is not enough to show willfulness. *Ikossi–Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 553 (5th Cir. 2009). To avoid summary judgment, Plaintiffs must "raise a fact question as to whether [the defendant] knew or recklessly disregarded that its [compensation scheme] was prohibited by the FLSA." *Id.* Plaintiffs fail to do so.

To show willfulness, the plaintiffs argue that NES "recklessly disregarded whether the retainer policy it implemented after the DOL determined it violated the law complied with the FLSA." (Docket Entry No. 106 at 23). The court agrees that given the DOL audit in 2016, NES was on notice that it was required to comply with the FLSA and that its pre-2016 compensation structure was not fully compliant. But NES has shown, by declaration, that it believed it complied with the FLSA because the DOL was provided a copy of the new pay plan and did not inform NES that the policy violated the FLSA. (Docket Entry Nos. 99 at 31, 99-2). NES also consulted with in-house counsel in determining whether each employee met the Retainer policy, cutting against a finding of willfulness. *See, e.g.*, *Halferty v. Pulse Drug Co., Inc.*, 826 F.2d 2, 3 (5th Cir. 1987) (finding no willfulness where the employer "consulted with its attorney and examined the DOL bulletin").

17

The plaintiffs also do not argue, or provide evidence to show, that any employee notified NES that its pay practices violated the FLSA. (Docket Entry No. 99 at 30–31); *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015) ("[E]mployers act willfully when they know their pay structures violate the FLSA or ignore complaints brought to their attention."). As Judge Ellison noted in finding that NES's violations were not willful under near-identical circumstances, "some of the issues in this case have been clarified by recent judicial developments, including the Supreme Court's decision in *Hewitt*." *Alvarez*, 2023 WL 9111908, at *11 (citing *Allen v. Coil Tubing Servs.*, *L.L.C.*, 846 F. Supp. 2d 678, 713 (S.D. Tex. 2012) (finding no willfulness where the employer's "interpretation of the MCA Exemption in the Relevant Period was not unreasonable in light of then-existing legal precedent"), *aff'd*, 755 F.3d 279 (5th Cir. 2014)).  The recent changes in case law also cut against finding willfulness on the part of NES before *Hewitt*.

The plaintiffs' conclusory allegations of willfulness raise no dispute of material fact, and so cannot be sustained. Their FLSA claims are subject to the default two-year limitations period.

### E.  The Good-Faith Defense

The FLSA provides for actual damages in unpaid overtime as well as an "additional equal amount as liquidated damages." 29 U.S.C. § 216(b). A court may "decline to award such damages (or reduce the amount) if the court concludes that the employer acted in 'good faith' and had 'reasonable grounds' to believe that its actions complied with the FLSA." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 822–23 (5th Cir. 2003) (citing 29 U.S.C. § 260). While the plaintiffs have the burden to show willfulness, the defendant "bears the 'substantial burden' of proving the reasonableness of its conduct." *Id.* "[G]ood faith requires some duty to investigate potential liability under the FLSA." *Barcellona v. Tiffany Eng. Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979).

"Even if the district court determines that the employer's actions were taken in good faith and based on reasonable grounds, the district court still retains the discretion to award liquidated damages." *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999).  The district court may decline to award liquidated damages when "the record . . .  contains testimony indicating that advice received during a Department of Labor investigation led [the employer] to believe that [its] practices . . . complied with FLSA." *Hoenninger v. Leasing Enterprises, Ltd.*, 803 F. App'x 756, 760 (5th Cir. 2020). "[T]he same facts that precluded a finding of willfulness also preclude a finding that Defendant did not act in good faith or lacked reasonable grounds when it adopted the at-issue compensation scheme after the 2016 DOL audit." *Alvarez*, 2023 WL 9111908, at *12 (citing *Gentry*, 2022 WL 658768, at *7 ("The most common way of proving good faith is when an employer proves reliance on the advice of the [DOL] or the advice of counsel on its classification and wage practices.")).

Because NES showed that it believed it was in compliance with the FLSA, and that it obtained the advice of counsel before classifying employees as exempt, the court finds no basis to exercise its discretion to award liquidated damages. Although NES was mistaken, the mistake was in good faith.

## IV.    Conclusion

The court concludes the following:

1. The Afhami declaration and summaries are admissible.

2. NES did not pay the plaintiffs on a salary basis under either 29 C.F.R. § 541.602(a) or § 541.604(b).

3. NES misclassified the plaintiffs as exempt employees under the HEC exemption.

4. There is no basis to decertify the conditionally certified class of plaintiffs.

5. NES's violations of the FLSA were not willful, and the two-year statute of limitations

applies.

6. NES's violations were in good faith.

The court denies NES's motion to strike (Docket Entry No. 108) the Afhami declaration and the

plaintiffs' Exhibit 21. The court grants in part in part the plaintiffs' motion for partial summary

judgment as to the exemption defense and denies in part the motion as to the good faith defense.

(Docket Entry No. 100). The court grants in part and denies in part NES's motion for summary

judgment. (Docket Entry No. 99).

SIGNED on April 17, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge